IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAGIK T.,<br><br>    Petitioner,<br><br>  vs.<br><br>CHRISTOPHER CHESTNUT, WARDEN,<br>CALIFORNIA CITY CORRECTIONAL<br>CENTER, *et al.*,<br><br>    Respondents. | Civil No. 1:26-cv-04337-MWJS<br><br>ORDER GRANTING PETITION FOR<br>WRIT OF HABEAS CORPUS<br><br>A# 216-809-968 |

## **INTRODUCTION**

Petitioner Gagik T.[1] is detained at the California City Detention Facility

("CCDF") pending the resolution of his removal proceedings.  He seeks a writ of habeas

corpus under 28 U.S.C. § 2241, for the second time, contending that his detention is

unlawful under Supreme Court precedent.  The court dismissed his first petition

without prejudice on the sole ground that he had not exhausted his administrative

remedies.  *Gagik T. v. Chestnut*, No. 1:26-cv-02839-MWJS, 2026 WL 1216897 (E.D. Cal.

May 4, 2026).  In that dismissal, the court reached no constitutional question.  Since that

---

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*,
No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only
Petitioner's first name and the initials of his last name are used in this order.

dismissal, Petitioner has returned to the immigration court, obtained a second custody determination on June 1, 2026, and now renews his petition.

Respondents oppose the petition and argue, as they did in response to Petitioner's first petition, that Petitioner still has not exhausted his administrative remedies, and that, in any event, the post-deprivation procedures of 8 U.S.C. § 1226(a) afford him all the process he is due.  For the reasons that follow, the court concludes that Petitioner possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process, and that the prudential exhaustion requirement does not bar consideration of that constitutional claim.  The court therefore GRANTS the petition.

## BACKGROUND

Petitioner is a 65-year-old native of Russia who entered the United States on January 17, 2020, on a B-2 visitor visa and was admitted through July 16, 2020.  Dkt. No. 1, Exh. 1; Dkt. No. 12, Exh. 1.  Before his authorized stay expired, on April 17, 2020, Petitioner filed an affirmative application for asylum and withholding of removal with the USCIS San Francisco Asylum Office.  Dkt. No. 1 at pg. 4.  That application remains pending.  *Id.*  Petitioner thereafter received multiple Employment Authorization Documents ("EAD"), the most recent valid through August 8, 2030.  *Id.*  He did not depart upon the expiration of his authorized period of admission and remained in the United States while his asylum application was pending.

2

For roughly six years, the Government did not seek to detain Petitioner.  On March 2, 2026, officers from the Sacramento ICE Enforcement and Removal Operations office arrested him in Sacramento, and ICE issued a Notice to Appear the same day, charging him with removability under INA § 237(a)(1)(B) for remaining in the United States beyond his authorized period of admission.  Dkt. No. 12, Exh. 1.  Petitioner was taken to CCDF, where he remains in custody.  Dkt. No. 1 at pg. 5.

On March 18, 2026, Petitioner appeared before an immigration judge ("IJ") at the Adelanto Immigration Court and requested a custody redetermination pursuant to 8 C.F.R. § 1236.  Dkt. No. 12, Exh. 2.  The IJ denied bond, finding Petitioner to be a "significant flight risk such that no amount of bond or conditions would secure his future court appearances," and citing, among other things, the absence of a stable employment history, the lack of legal status among Petitioner's immediate family members, and deficiencies in the showing as to his proposed sponsor.  *Id.*  Both parties reserved appeal. *Id.*  Petitioner did not appeal that ruling to the Board of Immigration Appeals (BIA).  Instead, after the court dismissed his first habeas petition, he requested a second custody redetermination, asserting a material change in circumstances based principally on his deteriorating health and newly submitted documentary evidence concerning his finances and sponsor.

On June 1, 2026, the IJ denied the request for a second bond hearing.  Dkt. No. 1, Exh. 3.  The IJ found that Petitioner had not presented "objective evidence" of a material

change in his physical and mental health, citing *Matter of Pelagio Mendoza*, 29 I&N Dec. 542, 546 (BIA 2026), and observing that the only medical document in the record predated his March 2026 bond hearing.  *Id.*  The IJ further found that Petitioner's tax and sponsor documents "could have been obtained and presented" at the March 2026 hearing.  *Id.*  Both parties again reserved appeal, with a deadline of July 1, 2026.  *Id.*  Petitioner did not appeal.

Petitioner has now been in continuous custody since March 2, 2026.  He represents that he is diabetic, suffers from documented heart disease, and that his health has deteriorated during his detention.  Dkt. No. 1 at pgs. 8–9.  He filed the instant petition on June 7, 2026.  Neither party has requested oral argument.

## DISCUSSION

Petitioner's central claim is that the Government, having made the determination that he could live at liberty in the United States for six years while his asylum application remained pending and while it issued and renewed his work authorization, could not seize and detain him without first affording him pre-deprivation process. Dkt. No. 1, at pgs. 12-13.  Respondents resist that claim on two grounds.  First, they argue that Petitioner has not exhausted his administrative remedies.  Dkt. No. 12, at pgs. 4–5.  Second, they argue that the procedures of § 1226(a)—which the Ninth Circuit has held facially constitutional in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir.

4

2022)—supply all the process Petitioner is due. *Id*. at pgs. 2–3. The court addresses exhaustion first, then the merits.

### A.    The Prudential Exhaustion Requirement

Before a district court reaches the merits of a habeas petition challenging immigration detention, it ordinarily considers whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As both parties acknowledge, the exhaustion requirement in this context is prudential rather than jurisdictional. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011); Dkt. No. 12 at pg. 4; Dkt. No. 13 at pg. 7. The court therefore retains discretion to excuse it.

In dismissing the first petition, the court applied the three considerations identified in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), and concluded that they favored requiring Petitioner to appeal the March 18, 2026, bond denial to the BIA before seeking federal relief. *Gagik T.*, 2026 WL 1216897 at *2–3. The court does not repeat its analysis of those factors here, and in any event, the posture is now materially different. The claim on which the court grants relief is not a request to review the discretionary weighing of bond factors, nor a contention that the IJ misapplied the governing bond standard. It is a constitutional claim: that the Government deprived Petitioner of liberty without the pre-deprivation process the Due Process Clause requires. Each *Puga* factor confirms that no further administrative detour is warranted as to that claim.

5

The court is mindful that the exhaustion requirement serves important interests, and that its prior order required Petitioner to engage the administrative process before coming to federal court.  He has now done so, twice.  When, as here, the remaining claim is a constitutional one beyond the agency's competence to resolve, the prudential exhaustion requirement does not bar review.  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Leonardo*, 646 F.3d at 1160.  The court accordingly excuses exhaustion and proceeds to the merits of the Due Process claim.

**B.      Petitioner's Protected Liberty Interest**

The Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Id.* at 690.  The threshold question is whether Petitioner held a liberty interest in his continued freedom such that the Government was required to afford process before depriving him of it.

Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained

6

without pre-deprivation process.  For example, in *Kharitonova v. Albarran*, the district court considered a long-present asylum applicant with no criminal history who was detained without a prior hearing.  No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026).  Rejecting the Government's contention that she held no liberty interest because it had never previously detained and released her, the court reasoned that the Government had "made a decision not to detain her in the first place," and that this decision vested the same liberty interest as a prior detention and release.  *Id*. at *2. Courts in this district have since adopted the district court's reasoning in *Kharitonova* on facts like those presented here.  *See Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026); *Villanueva-Montanez v. Lyons*, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930 (E.D. Cal. Mar. 23, 2026); *E.E.O.H. v. Noem*, No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4–5 (E.D. Cal. Mar. 26, 2026).

The court similarly finds that reasoning applicable and persuasive here. Petitioner was lawfully admitted in 2020.  Dkt. No. 12, Exh. 1.  He filed a timely application for asylum that USCIS has accepted and that remains pending.  Although his initial permission to enter the United States expired, the government chose to grant him employment authorization.  It then chose to renew it—and, indeed, it remains valid through 2030.  By concluding that there was no need to detain Petitioner after his B-2 visitor visa had expired, and instead sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested

in Petitioner a liberty interest in his continued freedom.  *See Kharitonova*, 2026 WL 531441, at \*2; *E.E.O.H.*, 2026 WL 850363, at \*4–5.

Respondents resist this conclusion principally by invoking *Rodriguez Diaz*, which held that the post-deprivation bond procedures of § 1226(a) facially satisfy due process. 53 F.4th at 1213.  But *Rodriguez Diaz* addressed the adequacy of the burden allocation at a bond hearing for a person *already in custody*; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process.  *See id.* at 1196–97.  That is the question presented here, and it is the question the courts of this district and others have answered against the Government.  Respondents' related contention—that Petitioner's admission and EAD reflect no formal determination of flight risk or dangerousness, Dkt. No. 12 at pgs. 2–3—does not defeat the liberty interest.  The point is not that any single agency action adjudicated flight risk.  It is that the Government's course of conduct over six years, taken as a whole, reflected a sustained decision to permit Petitioner's liberty, and it is that decision that gives rise to the interest the Due Process Clause protects.  *See E.E.O.H.*, 2026 WL 850363, at \*4–5.

### C.      Post-Deprivation Process

Having held a protected liberty interest, Petitioner was entitled to process commensurate with that interest.  The familiar framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), governs what process is due, weighing the private interest affected, the

8

risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and the Government's interest. *Id.* at 335. Each consideration favors Petitioner. His interest in freedom from physical detention is weighty. *Zadvydas*, 533 U.S. at 690. The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high. And the Government's interest is modest: it has identified no reason a custody hearing could not have preceded, rather than followed, Petitioner's detention, and a pre-deprivation hearing imposes only the ordinary administrative burden of a proceeding the Government must conduct in any event. *See E.E.O.H.*, 2026 WL 850363, at *5; *Kalkan*, 2026 WL 788112, at *2.

Respondents urge that whatever process was due was supplied by the bond hearings Petitioner received after his detention. The court is not persuaded. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. *See Reyes Servin v. Semaia*, No. 5:26-cv-02745-MAR, 2026 WL 1670852, at *6–7 (C.D. Cal. June 4, 2026); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Nothing in the record suggests that affording Petitioner a hearing before his seizure was impracticable. There is no suggestion, for example, that immigration officials raced to take Petitioner into custody because a new allegation of criminal conduct had emerged. *Accord Addemys N.R. v. Warden*, 1:26-cv-03892-MWJS

9

(E.D. Cal. June 25, 2026) (holding that post-deprivation process was constitutionally sufficient because "Petitioner was recently arrested by state law enforcement authorities on a charge of having committed a serious criminal violation").  To the contrary, there is no suggestion that Petitioner has any criminal history at all.  Because pre-deprivation process could have been provided to him and was not, the post-deprivation bond proceedings did not satisfy due process, and the court need not separately resolve Petitioner's contention that the June 1, 2026, order independently misapplied the governing bond standard.  That argument bears on the merits of the bond determination, which the court does not reach; it suffices that the post-deprivation process Petitioner received cannot substitute for the pre-deprivation process he was due.

## CONCLUSION

Having found persuasive the reasoning of other judges of this district addressing comparable facts, the court orders the same relief here.  *See Kalkan*, 2026 WL 788112, at *2; *Villanueva-Montanez*, 2026 WL 797930, at *2; *E.E.O.H.*, 2026 WL 850363, at *8.  IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED for the reasons stated in those prior orders.  Because it is unnecessary to resolve the other claims in the petition, the court declines to do so.  Given the foregoing, Petitioner's motion for a temporary restraining order, Dkt. No. 2, is DENIED AS MOOT.

10

Respondents are ORDERED to immediately release Petitioner Gagik T. (A# 216-809-968) from their custody.  Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present.  This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

//

//

//

//

//

The Clerk of Court is DIRECTED to close this case and enter judgment for

Petitioner.

IT IS SO ORDERED.

DATED:      June 25, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge